# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Sammie Lee Austin, Terrance Williams, and Dujuan Williams, on behalf of themselves and all others similarly situated, | Civil No. 11-3621 (DWF/SER) |
| Plaintiffs, | **ORDER GRATING FINAL APPROVAL OF THE SETTLEMENT AGREEMENT AND RELEASE BETWEEN PLAINTIFFS AND THE METROPOLITAN COUNCIL, CERTIFYING A SETTLEMENT CLASS, APPROVING PAYMENT OF SERVICE AWARDS AND ATTORNEY FEES AND EXPENSES, AND DIRECTING ENTRY OF JUDGMENT** |
| v. | |
| Metropolitan Council through its operating division, Metro Transit, | |
| Defendant. | |

---

Kent M. Williams, Esq., Williams Law Firm, counsel for Plaintiffs.

Charles N. Nauen, Esq., and Susan E. Ellingstad, Esq., Lockridge Grindal Nauen P.L.L.P.

---

WHEREAS, this matter has come before the Court pursuant to a Motion for Entry of an Order Granting Final Approval of the Settlement Agreement and Release between the Plaintiffs and Metropolitan Council and its operating division, Metro Transit ("Defendant"), Certifying a Settlement Class, Approving Payment of Service Awards and Attorney's Fees and Expenses, and For Entry of Judgment ("the Motion"); and

WHEREAS, the Court finds that it has jurisdiction over this action and the parties for settlement purposes; and

WHEREAS, the Court conducted a final approval hearing on March 23, 2012, has considered all submissions from the parties regarding the Motion, as well as comments and objections from Class Members and others, some of whom were present at the hearing and were given a full opportunity to speak, and is otherwise fully apprised of the premises;

**IT IS HEREBY ORDERED** that the terms of the Settlement Agreement and Release between Plaintiffs and Defendant, including all Exhibits thereto ("the Agreement"), are hereby **APPROVED** in all respects.  This Order incorporates herein, and makes a part hereof, the Agreement, including all Exhibits thereto. Unless otherwise provided herein, the terms defined in the Agreement shall have the same meanings herein.  The Court finds that the Injunctive Relief Provisions embodied in the Agreement address the allegations of the Complaint, and are fair and reasonable, in light of the current posture of the litigation and the risks and benefits to the parties involved in the settlement of these claims and continuation of the litigation.

In making this determination, the Court makes the following Findings of Fact and Conclusions of Law:

## I.    FINDINGS OF FACT

### A.    Factual and Procedural Background

1.    Sammie Austin, Terrance Williams, and Dujuan Williams (collectively, "Plaintiffs"), three African American bus operators who together

have over thirty years of employment at Defendant, brought this action on behalf of themselves and all other African American bus operators to rectify alleged racial discrimination in how Defendant's customer complaint, discipline, and grievance policies are applied.

2.      According to sworn affidavits submitted by Plaintiffs, which are uncontested, this case began when Mr. Austin, after discussing the situation at length with many of his co-workers, contacted at least three attorneys over the course of several months.  None were willing to take the case.  Finally, in April of 2010, Mr. Austin contacted Kent Williams of Williams Law Firm, who after meeting with Mr. Austin, agreed to represent him.

3.      Mr. Austin and his co-plaintiffs, Terry Williams and Dujuan Williams, spent the next several months meeting with Mr. Williams to assist in the investigation of this matter.  Mr. Austin attested to spending in excess of 1200 hours working on this case.  Terry and Dujuan Williams attested that they each spent over 800 hours working on this case.

4.      In the summer of 2010, Plaintiffs filed an initial complaint with the Equal Employment Opportunity Commission ("EEOC"), were separately interviewed by the EEOC, and provided the requisite information for a charge to be issued.  The EEOC issued a Right-to-Sue Letter to each of the Plaintiffs in September of 2010, and with the further assistance of Plaintiffs, Mr. Williams drafted a Class Action Complaint.

5.     Plaintiffs allege disparate treatment by the Defendant of African American Defendant bus operators in the assessment and handling of customer complaints, the imposition of discipline, including termination, and how grievances challenging said discipline are addressed.  Plaintiffs contend that, with respect to African American bus operators, customer complaints are not adequately verified, they are logged more frequently, and they are more often used as a basis for discipline, than they are for Caucasian bus operators.  Plaintiffs allege that the reason for this disparity is racial discrimination.  Plaintiffs also allege that grievances brought by African American bus operators to rectify overly harsh discipline are usually fruitless, because the relevant Defendant officials allegedly either condone racially-motivated discipline, or are at least reluctant to countermand discipline imposed by lower management, even if the discipline was motivated in whole or in part by racial basis.  Plaintiffs allege that this adversely affects the ability of African American bus operators to be promoted at Defendant, because they are more likely to have damaging information in their employment records than Caucasian bus operators with whom they are competing for advancement opportunities.  Defendant vigorously denies all of these allegations.

6.     In the Complaint, Plaintiffs allege claims of (1) Intentional Discrimination under 42 U.S.C. §§ 2000e, *et seq*.; (2) Retaliation under 42 U.S.C. § 2000e-3(a); (3) Intentional Discrimination under 42 U.S.C. §§ 1981, 1983; (4) Retaliation under 42 U.S.C. §§ 1981, 1983; (5) Unfair Employment Practices

4

under Minn. Stat. § 363A.08; and (6) Reprisal under Minn. Stat. § 363A.15.

Plaintiffs seek declaratory and injunctive relief to address the alleged deficiencies

in Defendant's customer complaint process, discipline, and grievance processes

that allegedly allow these processes to be affected by racial discrimination.

7.      Defendant vigorously denies all of the allegations of the Complaint

and expressly makes no admission of liability in the Settlement Agreement.  In

approving the Settlement Agreement, this Court makes no finding of liability with

respect to any of the allegations or claims in the Complaint.

8.      Plaintiffs, through their counsel, submitted the Class Action

Complaint to counsel for Defendant to see if there was any interest in reaching a

resolution before engaging in full-blown litigation.  Defendant expressed such an

interest.  The parties agreed that any statutes of limitation on Plaintiffs' claims

would be tolled during the settlement discussions.

9.      Starting in October of 2010, the parties exchanged information and

conducted their own respective investigations into Plaintiffs' allegations.  With

the assistance of their counsel, Plaintiffs continued to evaluate and discuss

Defendant's policies among themselves and other bus operators, and proposed

changes that would alleviate what they and other African American bus

operators perceive as discriminatory effects of those policies.  Defendant and its

counsel consulted with relevant Defendant officials as to the feasibility of

Plaintiffs' proposals, accepted certain proposals, and made counter-proposals, as

5

they deemed appropriate.  All aspects of the case–including the most effective means for addressing Plaintiffs' allegations–were contested and debated by both sides.

10.     In July of 2011, the parties reached an agreement in principle to design and implement significant changes in how Defendant verifies and handles customer complaints, imposes discipline, and conducts grievance proceedings. Because the employment of all Defendant bus operators is subject to a collective bargaining agreement between Defendant and the Amalgamated Transit Union Local 1005 ("the ATU"), the ATU's agreement must be obtained as to certain policy changes.

11.     By October of 2011–approximately a year after negotiations first commenced–counsel for the parties had concluded negotiations and prepared a draft Settlement Agreement.  Plaintiffs executed the Agreement in November of 2011; and Defendant obtained all necessary approvals and signatures by December 15, 2011.

12.     On December 16, the Class Action Complaint, Motion for Entry of an Order Granting Preliminary Approval of the Settlement Agreement and Release Between Plaintiffs and Defendant, Certifying a Settlement Class, Directing Notice to the Class, and Scheduling a Fairness Hearing, and supporting papers were filed with the Court.  The Court held a preliminary approval hearing

on January 4, 2012, and issued an Order granting Preliminary Approval and directing Notice to the Class on January 8, 2012.

13.     Per the Court's directive, Court-approved notice was disseminated via First-Class Mail to 503 Class Members on or about January 10, 2012.  Eleven of these were returned and re-mailed using updated addresses.  In addition, on January 12, 2012, Defendant posted the class notice on its internal website, and posted a one-page summary notice in prominent locations at all Defendant Garages. The Court is confident that all Class Members have been fairly apprised of the terms of the Agreement, and the pendency of the Settlement.

**B.     Summary of the Settlement Agreement[1]**

14.     The proposed Agreement runs for five years.  The Settlement Class is defined as follows:

> All current and future African American[2] employees of the Defendant in the position of bus operator in any Defendant facility, for one or more days beginning on or after the Effective Date of the Settlement Agreement, through the date that the Settlement Agreement terminates.

15.     During its five-year term, the Settlement Agreement provides the following Injunctive Relief:

---

[1]     The following paragraphs summarize the language of the Settlement Agreement and are not intended to fully set forth all of its provisions.  To the extent that this summary is in any way inconsistent with the Settlement Agreement, the actual terms of the Settlement Agreement prevail.

[2]     "African American" is intended to encompass all black bus operators.

16. <u>Verification of Customer Complaints</u>. The Parties agree that Defendant will revise the operating procedures within six months of the Effective Date of this Settlement Agreement to provide additional and/or amended guidelines for verification procedures for Customer Relations' personnel and ATMs. Class Counsel will have the opportunity to review and comment on the proposed amended guidelines regarding verification of customer complaints prior to Defendant's final revision of the guidelines.

17. <u>The Customer Complaint Process</u>.

a. The Parties Agree that Defendant will revise the coding system for customer complaints within six months of the Effective Date of the Settlement Agreement. This will involve revising the codes available for use by the Customer Relations Department upon intake of a customer complaint. Class Counsel will have the opportunity to review and comment on the proposed revisions to the coding system prior to Defendant's final revision.

b. When a customer complaint is logged or filed against a bus operator, the responsible ATM will provide a written statement to the bus operator informing him/her that he/she may contact the ODEO, the MDHR, and/or the EEOC if the bus operator believes the discipline is discriminatory based on race or any other protected class (such as color, creed, religion, national origin, sex, marital, or public assistance status, sexual orientation, disability, age, or membership or activity with a local human rights commission).

8

c.      Within six months of the Effective Date of this Settlement Agreement, all customer complaints older than 38 months will be automatically removed from view from supervisors, assistant managers and customer relations employees in the HASTUS, DSL, and Customer Service databases.  For the purposes of disciplinary action, the use of customer complaints shall be governed by Defendant's Collective Bargaining Agreement with ATU.  This Settlement Agreement will not limit Defendant's ability to use or submit a complaint older than three years for other purposes at an arbitration hearing, subject to the arbitrator's ruling on admissibility of such evidence.

18.      <u>The Grievance Process</u>.  Subject to agreement with the Amalgamated Transit Union Local 1005 (ATU), during the five-year Settlement Term, at the written request of any Class Member, a representative from Defendant's Office of Diversity and Equal Opportunity ("ODEO") will attend the second step grievance meeting.  The ODEO representative attending the grievance meeting will observe and not participate at the grievance meeting and will consult with the Director or Assistant Director of Defendant following the meeting.

19.      The grievance response forms provided by Defendant at the first and second steps of the grievance proceedings shall include the following language: "If any employees believe that they have been treated differently or unfairly in connection with their discipline based on a protected class (such as race, color, creed, religion, national origin, sex, marital, or public assistance status, sexual

9

orientation, disability, age, or membership or activity with a local human rights commission), they may contact the ODEO, the MDHR or the EEOC." If a Class Member informs the ODEO that he/she believes he/she has been subjected to discrimination on the basis of race in connection with his/her discipline, the ODEO will provide the employee the name and phone number of Class Counsel.

20.     <u>Monitoring</u>. During the five-year Settlement Term, Defendant shall provide to Class Counsel on an annual basis the information set forth below regarding bus operators. Assuming the Effective Date occurs in 2012, the first production of information pursuant to this section shall be provided to Class Counsel no later than two months after the Effective Date and shall consist of 2011 data. On each anniversary of the Effective Date thereafter during the Settlement Term, Defendant shall provide the data identified below from the preceding calendar year:

a.     ODEO complaints sorted by race of bus operator: the number of complaints by bus operators alleging race discrimination that are reported to the ODEO each year, as well as the subsequent disposition of each such complaint;

b.     Customer complaint data sorted by race of bus operator: the total number of customer complaints against bus operators recorded by Defendant's Customer Relations Department per year; the number of those customer complaints as to which no

further action is taken by the Customer Relations Department; the

number of customer complaints that proceed to the Assistant

Transportation Manager ("ATM") for review, and the number of

complaints that are disposed of by the ATM in the following ways:

no action taken, policy review, logged, and filed; and

     c.    Grievance data regarding bus operators sorted by race

of bus operator:  without identifying the employee, the number of

grievances filed, and as to each grievance, information regarding the

nature of the grievance and the disposition of the grievance at each

step of the grievance process.

     21.    Counsel for both sides shall meet and confer regarding any perceived

issues that arise as a result of the data.  If an issue cannot be resolved by Counsel,

the parties may invoke the Court's continuing jurisdiction over the Settlement,

mediate the issue with the assistance of the Magistrate Judge, and seek a

modification of the injunctive relief to address the issue, as they deem necessary

and appropriate.

     22.    <u>The Release of Claims</u>.  The Settlement Agreement provides the

following Release of Claims:  For good and valuable consideration, the sufficiency

of which is hereby acknowledged, Named Plaintiffs and the Settlement Class do

hereby irrevocably release, quit, forever discharge Defendant, its current and

former parents, subsidiaries, affiliates, predecessors, insurers, agents, employees,

successors, assigns, officers, officials, directors, and attorneys ("Released Parties")

from any and all claims, rights, damages, costs, fees, demands, charges,

complaints, causes of action, obligations or liability of any and every kind, that

were asserted in the litigation or that could have been but were not asserted in the

litigation, whether known or unknown, arising out of the alleged facts,

circumstances, and occurrences underlying the allegations as set forth in the Class

Action Complaint, including future or residual effects of the allegations contained

in the Class Action Complaint.  Specifically, Named Plaintiffs and the Settlement

Class release all claims of race discrimination asserted in the Class Action

Complaint in this matter, including any claims relating to racial harassment or

hostile work environment; race discrimination in promotions, discipline, transfers,

route assignments, bus assignments, termination, and any other personnel

decisions; race discrimination in the processing or arbitration of grievances under

the collective bargaining agreement; and any claims for retaliation, including any

claims, whether known or unknown, of employment discrimination or retaliation

on any basis, including without limitation, any claims under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. section 1981, 42 U.S.C. section 1983, the Civil

Rights Act of 1991, or any other federal, state, county or city law or ordinance

regarding discrimination or retaliation in employment (collectively, "Released

Claims").  This release includes all claims described above occurring prior to the

date of this Settlement Agreement and any future effect or alleged disparate impact of such prior occurrences.

Named Plaintiffs and the Settlement Class understand and agree that, as to them, this release is a full and final general release as to all claims, currently known, anticipated, or disclosed to them, and to all those claims that are presently unknown, unanticipated and undisclosed to them, arising out of their employment with Defendant.  Named Plaintiffs, Class Counsel and the Settlement Class agree that during the Settlement Term, any dispute, issue, or claim related to any matter within the scope of this Settlement Agreement, or alleged in or encompassed within the Class Action Complaint (including but not limited to the allegations of disparate treatment or disparate impact involving discipline, assignments and promotion), may be resolved solely through the remedies and procedures established herein and may not be resolved by resort to the filing of any new claims or lawsuits against Released Parties during the Settlement Term.  This Settlement Agreement shall be fully binding and effective for purposes of res judicata and collateral estoppel upon Defendant and all persons raising claims in this case, either individually or as a class, with respect to the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*, and the Minnesota Human Rights Act, Chapter 363A, or any other federal, state or local statute, ordinance, rule, or regulation regarding race discrimination or retaliation.  Except

as otherwise set forth herein, upon payment of the attorney fees, Class Counsel in this case hereby releases all claims for attorney fees or other fees he has against Defendant.

Excepted from this release is any claim or right which cannot be waived by law, including a claim to enforce the terms of this Settlement Agreement, or the right to file a charge with or participate in an investigation conducted by the Equal Employment Opportunity Commission, the National Labor Relations Board and/or state administrative agency.  The Named Plaintiffs and Settlement Class are waiving, however, their right to any monetary recovery should the EEOC, NLRB, or any other agency pursue any claims on their behalf, and specifically agree that the recourse regarding any dispute, issue or claim related to any matter within the scope of this Settlement Agreement or the Class Action Complaint shall be through the remedies and procedures established pursuant to this Settlement Agreement.

23.     <u>Attorney Fees and Expenses and Service Awards</u>.  The Settlement Agreement provides for class representative service payments of $20,000 each, and attorney fees and expense reimbursement of $425,000, subject to the discretion and approval of the Court.  Defendant has agreed to pay these amounts, and does not object to them.

### C.      Response from Class Members

24.      The Settlement Class numbers approximately 500 members.  Five written responses have been received by the Court following publication of the Notice of the Settlement Agreement.  This represents less than one percent of the Settlement Class.  The Court has carefully considered all of the submissions received.  Only two submissions actually object to the terms of the Settlement Agreement as insufficient, and only two of these objections can be verified as coming from a Class Member.

25.      The March 23, 2012 hearing on final approval was attended by three persons in addition to Plaintiffs, Class Counsel, and Counsel for Defendant.  Two of these persons, both former bus operators, voiced support for the Agreement.  The third person, whose fiancé is a Class Member and submitted a written objection, voiced opposition to the Agreement.  The Court also heard comments from Plaintiffs, and from Counsel for both parties.  The Court has considered all of the comments made at the hearing.

## II.      CONCLUSIONS OF LAW

### A.      Reasonableness and Adequacy of the Proposed Settlement

26.      A presumption of correctness applies to a class settlement reached in arm's-length negotiations between experienced, capable counsel.  *See City P'ship Co. v. Atlantic Acquisition Ltd.*, 100 F.3d 1041, 1043 (1st Cir. 1996); *see also* 4 Newberg § 11.41 (noting that where the settlement is the product of arm's-length

negotiations between capable counsel experienced in complex class action litigation, the court should begin its analysis with a presumption that the settlement is fair and should be approved). Plaintiffs undertook substantial investigation in this matter. They gathered facts, interviewed dozens of witnesses, and reviewed thousands of pages of documents. Plaintiffs also drew from facts they have learned due to their own lengthy employment histories at Defendant. Plaintiffs sat for lengthy interviews with the EEOC, and provided additional facts for the Class Action Complaint. All of these activities helped inform Plaintiffs and their counsel of relevant facts necessary to properly evaluate and negotiate a class-wide settlement of this matter.

27.    Once begun, the settlement negotiations were vigorous and protracted, with attempts to reach resolution spanning several months. Certain facts and issues were hotly debated, and proposals and counter-proposals were exchanged, before a potential resolution began to take shape. Counsel on both sides–experienced, capable attorneys with extensive experience in class actions and other complex litigation–had to think creatively to design measures that would be effective in addressing Plaintiffs' allegations. It was not until all material terms were agreed to that the parties discussed payment of class representative service awards and attorney fees and costs.

28.    In light of the above, the Court concludes that the proposed settlement is entitled to a presumption of fairness. There is no hint of collusion.

As the Court has already concluded, the Settlement Agreement was reached only after extensive, arm's-length negotiation between experienced counsel.  Counsel for both sides are capable, they acted in good faith, and they represented their clients' best interests in reaching a settlement of this matter.

29.   Courts consider the following four factors in determining whether a proposed settlement is fair and reasonable:  (1) the merits of the case, weighed against the terms of the settlement; (2) the defendants' financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement.  *In re Wireless Tele. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005).  Each of these factors counsels in favor of approving the proposed settlement.

30.   The single most important factor is to balance the merits of Plaintiffs' case against the terms of the Settlement Agreement.  *In re Wireless*, 369 F.3d at 933.  In so doing, the Court balances the uncertainty of a litigated resolution against the certainty of immediate benefits provided by the proposed settlement.  *Id.*

31.   Plaintiffs make specific complaints about Defendant's customer complaint, discipline, and grievance policies and procedures.  They contend that they are singled out by Defendant in having customer complaints verified and logged in their employment files.  They also contend that they are subject to relatively harsh discipline, and that when they bring grievances, management

17

ignores evidence of discrimination in order to rubber-stamp the actions of lower management.  Plaintiffs contend that these activities are ongoing and that they will affect both current and future employees, if allowed to continue.

32.    Plaintiffs and their counsel have assessed the probability of ultimate success on the merits, including obtaining class certification, establishing liability at trial, and formulating and implementing injunctive relief.  Settlement Class Counsel has conducted numerous witness interviews, reviewed documents, conducted informal discovery, consulted with Plaintiffs, and engaged in other fact-finding, to fully apprise himself of the issues presented by Plaintiffs' allegations.

33.    Although Met Council vigorously disputes any allegation of discrimination, it has agreed as part of the Settlement to injunctive relief in the form of numerous changes in its policies and procedures.  In Title VII cases, such injunctive relief is valuable to both current and future employees because it provides continuing benefits to employees during the full term of a settlement agreement.  *See Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85, 87 (E.D. Mich. 1989) (describing significant benefits of injunctive relief provisions, such as a monitoring program for current and future employees included within the settlement agreement); *see also Huguley v. General Motors*, 999 F.2d 142, 147 (6th Cir. 1993) (holding that employee's discrimination claim was barred by

18

settlement agreement's release of claims relating to the "future effect" of past discrimination).

34.     Counsel for both sides have pledged to work to improve the verification procedures for customer complaints, and how customer complaints are coded.  Relatively stale complaints cannot be considered in lower management's decision about whether and to what extent discipline is to be imposed.  Class Members will be advised, in writing, of their right to complain to the ODEO, EEOC, or MDHR if they believe they have been subjected to discrimination.  If a Class Member wishes to bring a grievance regarding a disciplinary action he or she feels was discriminatory, he or she may request the attendance of an ODEO representative, who will consult with Defendant management following the grievance meeting.  And, if a Class Member informs the ODEO that he believes he has been subjected to discrimination on the basis of race in connection with his discipline, the ODEO will provide the employee the name and phone number of Settlement Class Counsel.

35.     The remedial effects of these changes will be assessed through monitoring and periodic reporting regarding customer complaints, discipline imposed, and grievance proceedings, broken down by race. Settlement Class Counsel will be provided with these reports, and will consult with Defendant's counsel about any perceived issues.  If counsel for the parties cannot resolve these issues, they agree to mediate their differences with the Magistrate Judge.

36.     The actual, immediate benefits of the proposed injunctive measures, which aim to eliminate the effect of the discrimination that would give rise to future claims, outweigh the elusive, speculative benefit that might come from further litigation.  Absent settlement, Defendant would likely contest all material issues, including class certification, liability, and any requested injunctive relief.  This case would undoubtedly drag on for years, at great expense.  In view of the risks of protracted litigation and the substantial, immediate benefits provided by the Settlement Agreement, the Court concludes that this first factor strongly favors approval of the proposed Settlement Agreement.

37.     With respect to Defendant's financial condition, there is no question that Defendant has the ability to fully implement the injunctive provisions of the settlement.  The settlement is intended to improve upon existing Defendant systems and procedures. Counsel for Defendant have consulted with the appropriate personnel at Defendant and have been assured that modifications to the customer complaint verification and coding procedures, and the screening of older customer complaints, can be implemented within the agreed upon time frame.  The ODEO will provide representatives to attend grievance proceedings, as requested by Class Members.  Defendant has the ability to track and provide the requested data for monitoring, as evidenced by the fact that similar data was provided to Plaintiffs' counsel during confirmatory discovery.  In sum, there is every reason to conclude that Defendant will fully and completely effectuate the

relief provided in the Settlement Agreement.  While Defendant perhaps could do

or pay more, "this fact, standing alone, does not render the settlement inadequate."

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999).

38.     In considering the third factor, the risks and complexity of further

litigation, there are substantial risks to proceeding.  The factual issues in this case

are complex, they involve a number of different current and former employees

from five different garages, and would require substantial investigation into the

circumstances of hundreds of separate customer complaints.  Plaintiffs would have

to establish a pattern or practice of discrimination, the existence of which

Defendant vigorously disputes.  These problems would only be compounded if

monetary damages were sought as "incidental" relief under Fed. R. Civ. P.

23(b)(2), or in action seeking money damage pursuant to Fed. Rule Civ. P.

23(b)(3).  All of the above would have to be accomplished in the face of vigorous

opposition by Defendant.  Even if Plaintiffs obtained class certification and

ultimately won at trial, proceeding to trial would add years to the resolution of this

case and could be further delayed by appeals, and "all the while the class members

would receive nothing."  *In re Wireless*, 396 F.3d at 933.  Because the Settlement

Agreement yields certain and substantial benefits aimed at improving workplace

conditions for Class Members, without further delay or expense, the Court

concludes that on balance, the risks and complexity of further litigation weighs in

favor of approval.

39.     With respect to the last factor, amount of opposition to the proposed settlement, where the number of objections is "minuscule," the Eighth Circuit has interpreted that response as evidence that the settlement warrants final approval. *See Petrovic*, 200 F.3d at 1152 (upholding approval where fewer than 4% of the class objected).  The Court has carefully considered all five written submissions, only two of which can fairly be characterized as "objections."  The Court has also considered the comments and objections made at the March 23, 2012 hearing.  The Court concludes that the relatively few objections from Class Members indicates a positive response to the settlement, and supports approval. *See In re Wireless*, 396 F.3d at 922.

### B.     Class Certification

40.     The Rule 23(a) elements of numerosity, commonality, typicality, and adequacy of representation are all satisfied in this case. *See Paxton v. Union Nat'l Bank*, 688 F.2d 552, 559 (8th Cir. 1982); Fed. R. Civ. P. 23(a).

41.     <u>Numerosity</u>.  The numerosity requirement of Rule 23(a)(1) requires an inquiry into whether the class is "so numerous that joinder of all members is impracticable."  *Paxton*, 688 F.2d at 559.  The class is comprised of approximately 500 African American Defendant bus operators with relatively small claims in relation to the presumed cost of litigating such claims, the joinder of whom into one action would be impracticable.

42.     <u>Commonality</u>.  Rule 23(a)(2) requires that there be common questions of law or fact among the members of the class.  The rule does not require that every question of law or fact be common to every member of the class. *Paxton*, 688 F.2d at 561 (citing *Mosley v. General Motors Corp*., 497 F.2d 1330, 1334 (8th Cir. 1974) and *Like v. Carter*, 448 F.2d 798, 802 (8th Cir. 1971)). Plaintiffs' factual and legal contentions–that Defendant's decisions regarding verification, recording, and discipline with respect to customer complaints are racially motivated, in violation of federal and state laws prohibiting racial discrimination in the workplace–are common to the class.

43.     <u>Typicality</u>.  Rule 23(a)(3) requires that "the claims or defenses of the representative parties (be) typical of the claims or defenses of the class."  This requirement is generally considered to be satisfied "if the claims or defenses of the representatives and the members of the class stem from a single event or are based on the same legal or remedial theory."  *Paxton*, 688 F2d. at 561-62 (citations omitted).  Plaintiffs' disparate treatment claims are typical of every Class Member, each of whom is an African-American bus operator subject to the same polices and procedures, with the same interest in a workplace free of discriminatory application of those policies.

44.     <u>Adequacy</u>.  The focus of Rule 23(a)(4) is:  (1) whether the class representatives have common interests with the members of the class; and (2) whether the class representatives will vigorously prosecute the interests of the

class through qualified counsel.  *Paxton*, 688 F.2d at 562-63 (citations omitted).  A

Rule 23(b)(2) Title VII class may include both current and future employees

because injunctive relief benefits both current and future employees.  *See Elliot v.*

*Sperry Rand Corp.*, 29 F.E.P. 754, 755 (D. Minn. 1981), *aff'd*, 680 F.2d 1225 (8th

Cir. 1982) (approving Title VII settlement comprised of class of both present and

future employees); *Rajender v. University of Minnesota*, Civ. No. 4-73-435, 1978

WL 212 (D. Minn. Feb. 13, 1978) (approving class of "past, present, and future

[female nonstudent] applicants" at the University of Minnesota because future

applicants' interests were co-extensive with current applicants); *Beasley v. Griffin*,

81 F.R.D. 114 (D. Mass. 1979) (including future applicants in Title VII class

because otherwise they would be unable to enforce provisions of settlement

agreement); *accord Thompson v. Roberson*, 2000 WL 33281120, *4 (S.D. Ind.

Dec. 4, 2000) (noting that the court had previously certified a class that

specifically included all past, present, and future employees); *Richardson v. Byrd*,

709 F.2d 1016 (5th Cir. 1983) (affirming the district court's class certification and

definition that included future members and determining that the class

representative had a sufficient nexus to enable her to represent a class consisting of

past, present, and future employees and applicants pursuant to Rule 23(a) and

(b)(2)).  *Cf. In re Northrop Grumman Corp. ERISA Litig.*, 2011 WL 3505264, *13

(C.D. Cal. Mar. 29, 2011) ("The inclusion of future class members in a class is not

itself unusual or objectionable.") (quoting *Rodriguez v. Hayes*, 591 F.3d 1105,

1118 (9th Cir. 2010)); *Perez-Farias v. Global Horizons, Inc.*, 2006 WL 2129295,

*2 -*3 (E.D. Wash. July 28, 2006); *Pederson v. Louisiana State University*, 213

F.3d 858, 868 n.11 (5th Cir. 2000).  Here, the Settlement Class is adequately

represented in that no Plaintiff has an interest that conflicts with that of any Class

Member with respect to these claims, they have the same interest as current and

future African-American bus operators in preventing discriminatory application of

policies and procedures regarding verification and discipline with respect to

customer complaints, and they are represented by counsel experienced in complex,

class action matters.

      45.    Rule 23(b)(2) provides that "an action may be maintained as a class

action if the prerequisites of subdivision (a) are satisfied, and in addition . . .

(2) the party opposing the class has acted or refused to act on grounds generally

applicable to the class, thereby making appropriate final injunctive relief or

corresponding declaratory relief with respect to the class as a whole."  Fed. R. Civ.

P. 23(b)(2).  Because of its mandatory nature, Rule 23(b)(2) requires that the court

review a settlement-only class certification proposal with "undiluted, even

heightened, attention."  *Amchem Products v. Windsor,* 521 U.S. 591, 620 (1997).

      46.    This case satisfies the requirements of Fed. R. Civ. P. 23(b)(2).

Rule 23(b)(2) certification is appropriate when plaintiffs seek injunctive relief

from acts of an employer "on [the] grounds generally applicable to the class."

*Paxton*, 688 F.2d at 563 (quoting *United States Fidelity & Guar. Co. v. Lord*, 585

F.2d 860, 875 (8th Cir. 1978)).  Courts have repeatedly found racial discrimination to be such a ground.  *See Paxton*, 688 F.2d at 563 (citing cases).  With the above-described policies and practices, Defendant has allegedly acted, or refused to act, on grounds that apply generally to the Class as a whole.

47.     For these reasons, the Court concludes that the Settlement Class meets the Requirements of Rule 23(a) and (b), and grants final certification of the Settlement Class.

### C.     Class Representative Service Awards and Attorney Fees and Expenses

48.     Rule 23(h) provides for the award of reasonable attorney fees and nontaxable costs that are authorized by law or by the parties' agreement.  Fed. R. Civ. P. 23(h).  Plaintiffs and their counsel move for $20,000 in class representative service awards for each named Plaintiff, and $425,000 for attorney fees and expenses for Williams Law Firm, pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2).  Defendant does not oppose these payments, and no objection has been voiced with respect to these payments.  The Court concludes that these amounts are reasonable, and approves the requested payments, as set forth in the Settlement Agreement.

49.     Class representatives play a crucial role in bringing justice to persons with relatively small individual claims, who would otherwise be hidden from judicial scrutiny.  *See, e.g, Bowens v. Atl. Maint. Corp.*, 546 F. Supp. 2d 55, 80

(E.D.N.Y. 2008) (citing *Yeboah v. Cent. Parking Sys.*, No. 06 Civ. 128

(RJD)(JMA), 2007 WL 3232509 (E.D.N.Y. Nov. 1, 2007).  The importance of

class representatives is particularly significant in employment discrimination

actions such as this one, where the plaintiff has an ongoing employment

relationship with the defendant.  *See Velez v. Majik Cleaning Serv.*, No. 03 Civ.

8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 22, 2007) ("[I]n employment

litigation, the plaintiff is often a former or current employee of the defendant, and

thus, by lending his name to the litigation, he has, for the benefit of the class as a

whole, undertaken the risk of adverse actions by the employer or co-workers")

(quoting *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (citation

omitted)).  Accordingly, "[i]ncentive awards are not uncommon in class action

cases and are within the discretion of the court."  *Frank v. Eastman Kodak Co.*,

228 F.R.D. 174, 187 (W.D.N.Y. 2005).

    50.    In examining the reasonableness of service awards, the court should

consider factor such as:  (1) the actions taken by the class representative to protect

the class's interests; (2) the degree to which the class has benefited from those

actions; and (3) the amount of time and effort expended in pursuing the litigation.

*In re U.S. Bancorp Litigation,* 291 F.3d 1035, 1038 (8th Cir. 2002) (citing *Cook v.*

*Nieder*t, 142 F.3 1004, 1016 (7th Cir. 1998)).

    51.    The affidavits submitted by the three Class Representatives attest to

the extraordinary effort they each put into this case.  *(See generally* Austin Aff. at

27

¶¶ 2-10; T. Williams Aff. at ¶¶ 2-10; D. Williams at ¶¶ 2-10.)  Among other things, Plaintiffs met with current and former employees, union officials and others, including counsel, to develop the facts relevant to this matter.  They closely monitored the settlement negotiations, and provided documents and other useful information.  They helped evaluate existing policies and procedures, formulate proposed changes, and consider counterproposals from Defendant.  They reviewed and approved numerous documents, including the EEOC charges, Class Action Complaint, and draft settlement provisions.  And, after the Notice was disseminated, they spent many hours answering questions and directing Class Members to Settlement Class Counsel for further information.

52.     The sworn Affidavits submitted by Plaintiffs indicate that these efforts were not made without personal cost to Plaintiffs.  Each of the Plaintiffs took on this considerable risk and inconvenience without any promise or guarantee of any recovery whatsoever, in the hope of making conditions better for all African-American bus operators at Defendant.  As explained above, the Settlement Class has benefitted from these efforts.  Moreover, it is common in employment discrimination cases for plaintiffs to fear possible retaliation for making a complaint against their employer.

53.     Plaintiffs request $20,000 each for their service to the Class. Plaintiffs' request is reasonable and well within the range of service awards made in other employment discrimination cases.  *See, e.g., Wright v. Stern*, 553 F. Supp.

2d 337, 342 (S.D.N.Y. 2008) (approving $50,000 awards to each of eleven named plaintiffs in employment discrimination action); *Roberts*, 979 F. Supp. at 200 (approving $50,000 and $85,000 to two of the named plaintiffs in race discrimination employment class action).  Defendant has agreed to pay this amount, and it will not detract from any of the relief provided under the Settlement Agreement.  Accordingly, the Court concludes that the service payments should be approved.

54.     Defendant has also agreed to pay Class Counsel a total of $425,000 for fees and expenses in this case.  It is settled law that attorney fee awards are authorized Title VII in employment discrimination actions that conclude by settlement without any formal adjudication on the merits.  *See Maher v. Gagne*, 448 U.S. 122, 129 & n.11 (1980).

55.     The Eighth Circuit has identified four factors in setting a reasonable lodestar fee:  (1) the number of hours expended; (2) a reasonable hourly rate; (3) the contingent nature of success; and (4) the quality of the attorney's work. *Grunin v. Int'l House of Pancakes,* 513 F.2d 114, 127 (8th Cir. 1975). Additionally, "in cases where fees are calculated using the lodestar method, counsel may be entitled to a multiplier to reward them for taking on risk and high-quality work."  *In re United Health Group Inc. PSLRA Litig.*, 643 F. Supp. 2d 1094, 1106 (D. Minn. 2009).  Each of these factors supports approval of Settlement Class Counsel's fee request.

29

56.     Class Counsel submitted a sworn affidavit, which is uncontested, that Class Counsel expended 986.75 hours, for a lodestar of $493,375.00, to investigate, bring, negotiate, and resolve this dispute.  This substantial investment of time by Class Counsel is directly responsible for the settlement benefits received by the Class.  Moreover, these hours do not account for the time that will potentially be expended by Class Counsel during the five-year term of the Settlement Agreement, monitoring compliance and efficacy, and addressing issues as they may arise in grievance proceedings, as requested by Class Members.

57.     Second, Class Counsel's customary rate of $500, which was used to calculate Class Counsel's lodestar, is at the lower end of complex class action rates approved in this District.  *See, e.g., Yarrington v. Solvay Pharmaceuticals*, 697 F. Supp. 2d 1057 (D. Minn. 2010) (recognizing that partner rates ranging from $500-$800 "are based on prevailing fees for complex class actions of this type that have been approved by other courts").

58.     Third, Class Counsel took this case on a contingency basis, working without pay for nearly two years.  In so doing, Class Counsel, a solo practitioner, took on a case that at least three other attorneys refused to pursue, and fully committed his resources to it, to the significant benefit of the class.

59.     Finally, Class Counsel performed high quality work in taking this case, discovering facts and evidence and developing the claims into a viable class case, shepherding the dispute through the EEOC, drafting a Class Action

30

Complaint, persuading  Defendant to consider a class-wide resolution without dragging the parties and the Court through lengthy, expensive litigation, and working cooperatively with Defendant and its attorneys to formulate an immediate solution that provides substantial benefits to both sides.

60.     Reasonable costs and expenses incurred by an attorney who creates a benefit for the class are typically reimbursed in a class action settlement.  *See, e.g., In re Xcel Energy Sec. Deriv & ERISA Litig.*, 364 F. Supp. 2d 1013 (D. Minn. 2005) (finding that costs such as filing fees, photocopy costs, travel expenses, postage, telephone and fax expenses, and computerized legal research fees were relevant and necessary expenses in class action litigation).  Class Counsel attests to expenses of $3,950.98, for costs such as filing fees, mileage, expenses associated with research, preparation, and filing of pleadings in this matter, copying costs, and postage.  All of these costs and expenses were advanced by Class Counsel with no guarantee that they would ultimately be recovered.  These costs were necessary in conjunction with this litigation and its resolution for the benefit of the Class, and accordingly, are reimbursable.

61.     Although his efforts would merit consideration of a positive multiplier, Class Counsel has agreed to reduce his fee even further, by agreeing to reimburse his expenses out of the $425,000 that Defendant has already agreed to pay.

62.     In sum, the $425,000 fee sought by Class Counsel for fees and

31

expenses is authorized by statute, it has been agreed to by Defendant, it does not

detract from the class benefit in any way, and the amount is reasonable.

Accordingly, the fee request is approved.

## WHEREFORE, THE COURT ORDERS AS FOLLOWS:

1.      The Motion for Final Approval of the Settlement Agreement and

Release between Plaintiffs and Defendant, Certifying a Settlement Class,

Approving Payment of Service Awards and Attorney Fees and Expenses, and For

Entry of Final Judgment (Doc. No. [12]) is **GRANTED** in its entirety;

2.      The parties shall forthwith proceed in good faith to implement the

provisions of the Settlement Agreement, and of this Order;

3.      A copy of this Order shall be posted on Defendant's intranet system,

available to all Class Members, for thirty days after the issuance of this Order; and

4.      This Court shall retain jurisdiction over this matter throughout the

Settlement Term, as provided in the Agreement.

## LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:  March 27, 2012          s/Donovan W. Frank
                                DONOVAN W. FRANK
                                United States District Judge